# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8001 | **DATE** | 10/23/2003 |
| **CASE TITLE** | Philip Jackson, et al. vs. Vtech Telecommunications Ltd. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 11/12/03 at 10:00 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ■ Trial set for 12/15/03 at 10:00 a.m.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motions for summary judgment [126-1, 137-1] are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | **OCT 2 4 2003** | |
| ✓ | Docketing to mail notices. | | date docketed | 171 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| RO | courtroom deputy's initials | CLERK | date mailed notice | |
| | | 03 OCT 23 PM 2:54 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED

OCT 2 4 2003

PHILIP JACKSON and PMJ FAMILY LTD. )
PARTNERSHIP,                        )
                                    )
            Plaintiffs,             )
                                    )     No. 01 C 8001
        v.                          )
                                    )     Judge Ruben Castillo
VTECH TELECOMMUNICATIONS LTD.,      )
VTECH COMMUNICATIONS, INC., and     )
TDS METROCOM, INC.,                 )
                                    )
            Defendants.             )

## MEMORANDUM OPINION AND ORDER

Presently before the Court are Defendants VTech Telecommunications, Ltd, VTech

Communications, Inc. (collectively "VTech") and TDS Metrocom, Inc.'s ("TDS") motions for

summary judgment against Plaintiff Philip Jackson and PMJ Family Limited Partnership

("Jackson" or "Plaintiffs") on Jackson's patent infringement action. For the following reasons,

VTech's motion for summary judgment is denied, (R. 137-1), and TDS's motion for summary

judgment also is denied, (R. 126-1).

## RELEVANT FACTS

Jackson holds title to United States Patent No. 4,596,900 ("the '900 patent"), which he

claims Defendants infringed with their own voicemail and answering machine products. The

'900 patent "discloses and claims a set of electronic circuits for remotely controlling appliances

or devices through the use of tones produced by touch-tone telephones." *Jackson v. Thomson*

*Consumer Elecs., Inc.*, 139 F. Supp. 2d. 1003, 1005 (S.D. Ind. 2001). For example, Jackson's

invention could be connected to a lighting, heating or air-conditioning system to enable a user to

|7|

remotely control it. In its preferred embodiment, an apparatus covered by the '900 patent uses a predetermined sequence of tones (an access code) to access and control other features of the appliance. The caller does so by entering additional predetermined sequences of codes (the control codes). When a control code is entered, the machine's "detecting means" detects which control code has been entered and then sends out a corresponding "sequence detection signal." A "control means" receives the sequence detection signal and subsequently sends a "control signal," which tells the appliance to either turn on or off. Jackson's device uses integrated circuit digital logic to perform these functions.[1]

Jackson alleges that certain of Defendants' voicemail and telephone answering machines, each of which use microprocessors rather than integrated circuit digital logic, infringe claims 5 and 79 of the '900 patent.[2] Claim 5 is expressed as a means-plus-function claim, which is recited

---

[1]  Claim 5 reads as follows:
A phone-line-linked, tone-operated control apparatus comprising: a detecting means coupled to receive tone signals from said phone line for detecting at least one predetermined sequence of predetermined tone signals for producing a corresponding detection signal; control means responsive to said sequence detection signal for producing a corresponding control signal; access limiting circuit means coupled with said detecting means for preventing production of said sequence detection signal until an access sequence comprising a further predetermined sequence of predetermined tone signals is first received on said phone line; wherein said access limiting circuit means includes gate means coupled with said detecting means for normally preventing response thereof to said tone signals, and counter means coupled to said gate means and responsive to said tone signals for causing said gate means to enable operation of said detecting means following a predetermined number of tone signals received thereby.

[2]  As noted in our claim-construction opinion, also issued today, the parties acknowledge that Claims 5 and 79 are almost identical, differing only in their use of "tone signal" versus "DTMF tone signal," respectively. Thus, our discussion of Claim 5 equally applies to Claim 79.

as a means for performing a precise function without identifying the particular structure, material or acts of the claimed invention. *See* 35 U.S.C. § 112, ¶ 6.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). We view the evidence in a light most favorable to the non-movant, and draw all reasonable inferences in its favor. *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000). An infringement analysis requires two steps: (1) claim construction to determine the scope and meaning of the asserted claims, and (2) a comparison of the properly construed claims with the allegedly infringing device to determine whether it embodies every limitation of the claims. *Id.*; *see also Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). The Court decides claim construction as a matter of law. *IMS*, 206 F.3d at 1429. But whether an accused device or method infringes a claim either literally or under the doctrine of equivalents is a question of fact. *Id.* The factual question of equivalency turns on whether the accused device is only insubstantially changed from what is claimed according to various tests and criteria, and thus "requires a balancing of credibility, persuasiveness and weight of evidence." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985). The party opposing summary judgment must point to an evidentiary conflict created on the record. *Id.* Thus, in patent cases, summary judgment is only appropriate when it is clear that no reasonable jury could return a verdict in Jackson's favor and "[a]ny doubt as to the existence of any issue of material fact requires denial of the motion." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1320 (Fed. Cir. 2003). Because infringement is a fact issue, a district court must approach a motion

for summary judgment of infringement or non-infringement with care. *SRI Int'l*, 775 F.3d at 1116.

## ANALYSIS

Defendants[3] move for summary judgment on the following three grounds: (1) non-infringement; (2) patent invalidity based on the doctrines of anticipation, inoperability and indefiniteness; and (3) patent unenforceability due to inequitable conduct. We address each argument in turn.[4]

### I. Non-Infringement

VTech argues that Jackson has failed to meet his *prima facie* burden of showing literal infringement because he has not satisfied the test for demonstrating structural equivalence of the accused devices to the '900 patent, nor has he shown infringement under the doctrine of equivalents.

#### A. Infringement under 35 U.S.C. § 112, ¶ 6

As noted above, the claims of the '900 patent are written in means-plus-function format. A means-plus-function limitation recites a function to be performed rather than a definite structure or materials for performing that function. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003). Thus, a means-plus-function limitation must be

---

[3] TDS and VTech filed separate motions for summary judgment each raising separate grounds. TDS subsequently adopted VTech's summary judgment motion insofar as it relates to the invalidity of Claim 5 and inequitable conduct in the prosecution of that claim. (R. 145-1.) TDS does not seek summary judgment on the question of infringement.

[4] As an initial matter, Jackson claims that we may not consult any of Defendants' expert evidence attached to its motion for summary judgment because it was not properly attested or sworn to. We disagree, and therefore reject Jackson's invitation to rely only on his experts' testimony.

construed to cover the corresponding structure, material or acts described in the specification or its equivalents. *Id.* In our claim-construction opinion, we interpreted the claim limitations by identifying the claimed function, construing the language of the terms and defining the corresponding structures to those functions. As we noted in that opinion, literal infringement of a means-plus-function limitation requires that the relevant structure in the accused device performs the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266 (Fed. Cir. 1999). We will not repeat our analysis here, except to note a few key points. First, functional identity and either structural identity or equivalence are both necessary. *See Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987). Structural equivalence requires that any differences between the structure in the accused device and the structures disclosed in the specification be "insubstantial." *Valmont Indus., Inc. v. Reinke Mfg. Co.,* 983 F.2d 1039, 1043 (Fed. Cir. 1993). As we held in our claim-construction opinion, determining whether differences are insubstantial between a patent employing means-plus-function claims and the accused device involves determining "whether the way the assertedly substitute structure performs the claimed function, and the result of that performance, is substantially different from the way the claimed function is performed by the corresponding structure, acts, or materials described in the specification, or its result." *Odetics*, 185 F.3d at 1267 (internal quotations omitted).

We agree with VTech that the test for structural equivalence requires that Jackson prove not only that a microprocessor in an accused device is programmed to perform the identical functions recited in Claim 5 of the '900 patent, but also that the microprocessor is programmed

to perform those functions in substantially the same way and with the same result as the corresponding structures in the '900 patent (the "way/result test"). Thus, VTech first argues that under this test Jackson has not presented sufficient evidence to make a *prima facie* case of infringement. Second, VTech asserts that even if Jackson has satisfied his *prima facie* burden, the accused devices simply do not infringe the '900 patent and thus it is entitled to a judgment as a matter of law.

In response to VTech's threshold argument about the sufficiency of Jackson's *prima facie* evidence, Plaintiffs raise three arguments. First, Jackson claims that the way/result test is not the appropriate test to apply in this case and instead, broader concepts of insubstantial differences and known interchangeability, of which Plaintiffs have provided evidence, should govern. Although these concepts are related to the question of structural equivalence and are important, *IMS*, 206 F.3d at 1435, they are not dispositive. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1309-10 (Fed. Cir. 1998). The appropriate test to determine structural equivalency of a means-plus-function claim is the way/result test and therefore Plaintiffs' proof of infringement under other theories and concepts, while perhaps persuasive, does not automatically defeat VTech's motion for summary judgment.

Next Plaintiffs claim that VTech's way/result approach improperly points to unclaimed functions to make its § 112, ¶ 6 non-equivalency argument, thereby importing additional functions that Jackson chose not to claim in his means elements. Although there is a danger of impermissible claim expansion in every structural equivalency analysis under the way/result test, *see, e.g., Overhead Door Corp. v. The Chamberlain Group, Inc.*, 194 F.3d 1261, 1270 (Fed. Cir. 1999), we do not believe that VTech's proposed way/result analysis impermissibly adds

6

functions to the claim limitations, but rather seeks to define how those functions are achieved and the results stemming from them.

Finally, Plaintiffs argue that even if the way/result test is the proper test, their infringement expert, Thomas Gafford, has presented ample "way/result" evidence and a thorough analysis that is sufficient to defeat a motion for summary judgment. VTech responds that Plaintiffs' way/result comparison is so generalized and broad as to be meaningless because it only demonstrates infringement by analysis of the basic manner in which any computer brings to bear logical circuitry under the command of software. (R. 141, VTech Mem. at 36.) VTech further argues that even if Plaintiffs' way/result evidence was sufficient to pass the bar to avoid summary judgment, it is clear that the accused products do not fall within the properly construed language of the '900 patent.

Claim 5 of the '900 patent discloses six separate limitations, each of which we construed in our accompanying claims construction opinion: (1) the "phone-line linked" element; (2) the detecting means; (3) the control means; (4) the access limiting circuit means; (5) the gate means; and (6) the counter means. The parties presently dispute only four of these elements, with VTech claiming that its products are not functionally or structurally equivalent to the disputed limitations and, thus, do not infringe Claim 5.

### 1. Phone-Line Linked

VTech first claims that its answering machines are not "phone-line linked" under Plaintiffs' own construction of that term. Specifically, VTech contends that one of Plaintiffs' own experts, Leroy Silva, admitted at his deposition that a device that could be controlled by a phone line in addition to other sources is not phone-line linked in the context of the '900 patent.

Because VTech's machines may be controlled by a wired push-button interface and some may be controlled over airwaves, VTech contends that its machines are not phone-line linked and thus do not infringe the '900 patent. Jackson urges us to reject VTech's "bizarre" construction, which he believes is based on a misconstruction of Dr. Silva's deposition testimony. After reading the relevant portions of Dr. Silva's deposition, we agree with Plaintiffs that Dr. Silva's point simply was to distinguish a piece of prior art that was not phone-line linked but could become so with modifications. (R. 157, Pls.' Resp., Ex. R, Silva Dep. at 387.) Given our rejection of VTech's proposed construction of Dr. Silva's testimony, we find it difficult to conclude that VTech's machines are not phone-line linked when, as Jackson points out, they are telephone answering devices.

### 2. Control Means

VTech next argues that Jackson has failed to meet his *prima facie* burden of proving infringement because he has not identified and compared the precise algorithm implemented by VTech software that mirrors OR gate 64 and flip flop 66 (the corresponding structures to the control means in the '900 patent) or shown that differences between them are insubstantial. *See WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348-49 (Fed. Cir. 1999) (noting that two devices did not have *identical* structure when their two microprocessors were programmed with different algorithms); *see also Tehrani v. Hamilton Med., Inc.*, 331 F.3d 1355, 1362 (Fed. Cir. 2003) (remanding to district court for failure to identify corresponding structure to claimed function because court omitted precise algorithm in disclosed microprocessor). VTech has cited no case holding that a patent holder may never establish structural *equivalence* of an accused device without providing the precise algorithm driving that device's microprocessor.

Additionally, Plaintiffs have conducted a way/result analysis that incorporates at least some software from the accused devices. We believe that this analysis, though perhaps not as specific as VTech would like, is sufficient to create a genuine issue of material fact as to whether the accused devices are structurally equivalent and whether they infringe the '900 patent. A jury may conclude that Jackson's way/result analysis is not convincing, that it does not go into sufficient detail to establish infringement (*i.e.*, that an analysis of the precise algorithm is required to make a way/result determination) or it may credit one side's expert testimony over the other's. *See Symbol Techs. v. Opticon, Inc.*, 935 F.2d 1569, 1576 (Fed. Cir. 1991) (plaintiff permitted to rest its *prima facie* case of infringement on expert testimony supported by claim charts, but defense is entitled on cross-examination to show that devices are non-infringing by attacking the factual underpinnings of expert's testimony).[5] We are not prepared to say at this juncture that the presence or absence of a precise algorithm in the evidence before this Court is determinative of non-infringement such that granting summary judgment in favor of VTech is mandated.

### 3. Access Limiting Circuit Means

The access limiting circuit means prevents a caller from performing any control operation until the correct access code is entered. VTech claims that its machines lack this limitation as defined in the '900 patent because its machines allow callers to access certain features without the entry of an access code. In support, VTech again points to Dr. Silva's deposition, wherein he

---

[5] And, as noted above, *see supra* at 6, Plaintiffs have presented at least some evidence of known interchangeability between the '900 patent's integrated circuit digital logic and VTech's microprocessors, which has some relevance in a § 112, ¶ 6 equivalence determination. *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1380 (Fed. Cir. 2000). Thus it is inappropriate, in light of this testimony, to hold that there are no genuine issues of material fact on the equivalency and infringement issues.

essentially testified that any device that does not prevent access without entry of an access code is substantially different from the '900 patent. Plaintiffs attach a supplemental declaration by Dr. Silva in an attempt to clarify his earlier deposition testimony. (R. 157, Pls.' Resp. Br., Ex. P, Silva Decl. at ¶ 46.) But VTech points out that Dr. Silva's attempted clarification still does not explain why the '900 patent access limiting circuit means and the accused VTech devices differ. Again, we do not believe that we are in a position to determine on the record before us what is essentially a battle of expert testimony. Accordingly, we will not grant summary judgment to VTech on this ground.

### 4. Counter Means

Finally, VTech claims that its machines do not perform the same function as Counter 124, the counter means' corresponding structure, and therefore do not infringe the patent. Specifically, VTech argues that, unlike the '900 patent, its machines do not count a predetermined number of tone signals before enabling the detecting means. Plaintiffs respond by offering a complex interpretation of the claim language to argue that "predetermined number of tone signals" only refers to tone signals received during the entry of a predetermined access sequence, rather than during the entry of any tone on the line. Thus, according to Plaintiffs, the counter means need not count tone signals received before the user begins to enter the predetermined sequence of the access code. VTech replies that Jackson's proposed construction is unsupported by the patent's drawings and that there is no portion of the '900 patent circuit that only receives tone signals during entry of the access sequence. Although we tend to agree with VTech that Plaintiffs' proposed construction of the term "predetermined number of tone signals"

is a bit bizarre on its face, we cannot say as a matter of law that no reasonable jury could find in Jackson's favor.

In conclusion, given that infringement is a fact issue and that we treat a motion for summary judgment of non-infringement with care, *SRI Int'l*, 775 F.2d at 1116, we believe that Plaintiffs have presented at least enough way/result evidence to create genuine issues of material fact as to whether the accused devices are structurally equivalent to the corresponding structures in the '900 patent. There also remain genuine issues of material fact on the question of infringement generally. Therefore, we deny VTech's motion for summary judgment on the question of non-infringement.

### B. Infringement under the Doctrine of Equivalents

An accused device that does not literally infringe a patent under 35 U.S.C. § 112, ¶ 6 nevertheless may infringe under the doctrine of equivalents. *Lockheed Martin*, 324 F.3d at 1320. The test for determining infringement under this doctrine is whether each element of the accused device performs "substantially the same function, in substantially the same way, to achieve substantially the same result." *Id.* But we must answer certain threshold questions before reaching the infringement issue. For example, we must determine whether the scope of the doctrine of equivalents, as applied to the Claim 5 limitations, has been narrowed by prosecution history estoppel. *Id.* Prosecution history estoppel "precludes a patentee from obtaining in an infringement suit protection for subject matter which it relinquished during prosecution in order to obtain allowance of the claims." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1574 (Fed. Cir. 1997). In its opening brief VTech argued that its products did not infringe under the doctrine of equivalents because: (1) due to certain amendments to Claim 5, Jackson's infringement claim

is barred by prosecution history estoppel; and (2) Jackson has not shown any evidence that the differences between the '900 patent and VTech's accused devices are insubstantial. In response, Jackson points out that the amendment to Claim 5 was not a narrowing amendment relating to patentability, and thus prosecution history estoppel does not apply. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, -- F.3d ---, 2003 WL 22220526 (Fed. Cir. Sept. 26, 2003) (stating that if an amendment filed in the PTO has not narrowed the literal scope of a claim, then prosecution history estoppel does not apply) (*citing Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003)). We agree with Jackson that the amendment to Claim 5, which involved nothing more than converting dependent Claim 13 into independent Claim 5 by inserting only grammatical alterations to the claim language, was not a narrowing amendment relating to patentability for purposes of invoking prosecution history estoppel. In any event, VTech apparently abandoned this argument in its reply, and instead focuses solely on its argument that the differences between the '900 patent and its accused devices are substantial. Because we have held that there are genuine issues of material fact regarding literal infringement of the '900 patent, granting summary judgment at this point with respect to the doctrine of equivalents would, for the same reasons, be inappropriate.

## II. Patent Invalidity

Defendants VTech and TDS next argue that the '900 patent is invalid under 35 U.S.C. § 102(b) because prior art anticipates Jackson's invention. They further argue that the patent is invalid under 35 U.S.C. § 112 because it is inoperable, fails to satisfy the written description requirement and is otherwise indefinite. We note at the outset, that there is a presumption of validity attached to the '900 patent, 35 U.S.C. § 282, and that Defendants must prove invalidity

by clear and convincing evidence. *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 446 (Fed. Cir. 1986).

## A. Anticipation

A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention. *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). A prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference. *Id.*

The first step in an invalidity analysis is claim construction, which we have done. *Cybor Corp.*, 138 F.3d at 1456. The second step—determining whether a prior art reference discloses each and every limitation of the claim expressly or inherently—is a question of fact. *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1343 (Fed. Cir. 2003). This factual question is contingent upon the proper claim construction, *id.* at 1344, and may be decided on summary judgment if the record reveals no genuine issues of material fact, *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1294 (Fed. Cir. 2002). A claim limitation is inherent in the prior art if it is necessarily present in the prior art, not merely probably or possibly present. *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 1993); *Rosco v. Mirror Lite Co.*, 304 F.3d 1373, 1380 (Fed. Cir. 2002). "[T]he dispositive question regarding anticipation is whether one skilled in the art would reasonably understand or infer from the prior art reference's teaching that every claim [limitation] was disclosed in that single reference." *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1368 (Fed. Cir. 2003) (internal quotations omitted).

13

Although Defendants initially raised seven pieces of prior art as anticipating various claims of the '900 patent, after Jackson limited his infringement claims to Claim 5, Defendants likewise narrowed their alleged anticipatory prior art references to three: (1) the Matthews patent; (2) the RC-850 Repeater Controller; and (3) the Monroe 3200R-13.[6]  As noted above, we will employ the construction of Claim 5 articulated in our accompanying claim-construction opinion. Thus, our task here is to determine whether any of the cited prior art discloses every limitation of Claim 5, either expressly or inherently.

### 1. The Monroe 3200R-13

Defendants argue that certain products manufactured and sold by Monroe more than one year before the filing of the '900 patent qualify as prior art for purposes of anticipation. Specifically, as relevant here, Defendants claim, relying on their expert Samuel Wood's analysis, that the Monroe 3200R-13 discloses each and every element of Claim 5.  Jackson responds first by arguing that the 3200R-13 is not prior art because it was allegedly not available for sale prior to the date of the '900 patent application.  Second, Jackson relies on the testimony of his expert, Leroy Silva, who asserts that the 3200R-13 lacks a detecting means and a counter means as disclosed in Claim 5.

Turning first to the question whether the 3200R-13 qualifies as prior art, for purposes of 35 U.S.C. § 112(b), prior-art invalidity attaches when "the invention was patented or described in

---

[6] TDS also initially argued that a patent held by Joseph Fomenko also anticipated the '900 patent.  In his response, Jackson argued that TDS had waived this piece of prior art by failing to raise it during discovery and that, regardless, the Fomenko patent did not constitute prior art because, according to Dr. Silva, it lacks all of the elements of Claim 5.  TDS failed to address Jackson's arguments in its reply, and thus we deem this claim abandoned.  In any event, we agree with Jackson that the Fomenko patent does not qualify as anticipatory prior art because it is substantially different from the '900 patent.

14

a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application" of the '900 patent. Defendants have provided undisputed evidence that the 3200R-13 was sold in 1979 and 1981, well more than a year before Jackson's '900 patent application in March 1984. (R. 139, Defs.' Exs., Tab. 33, 3200R Serial Number Records at MON 326-27.) Thus, Jackson's first argument is unavailing.

Jackson next faults Defendants for failing to provide any evidence of § 112, ¶ 6 equivalency. But, as Defendants note, the 3200R-13 uses the exact same types of hard-wired discrete logic circuits as the '900 patent; therefore, unlike their own microprocessor-driven devices, a structural equivalence analysis is not required. Defendants' expert Samuel Wood testified that the structures of the 3200R-13 and the '900 patent are substantially similar.

Jackson next argues that the 3200R-13 does not anticipate because it lacks the counter means limitation contained within Claim 5. In fact, the counter means is the only limitation contained within Claim 5 that Jackson challenges as it relates to the 3200R-13. According to Plaintiffs' expert Leroy Silva, the flip-flops contained within the 3200R-13 do not act as counters in the same way as the counter means in the '900 patent because they count only the correct tone signals, whereas the counter means in Claim 5 counts all the tone signals, correct or incorrect. In essence, Dr. Silva is positing that the flip-flops act more as filters than as counters and therefore do not anticipate the '900 patent.

Defendants respond that Plaintiffs have created a bizarre construction of the counter means in order to avoid a judgment of non-infringement on the one hand and a finding of anticipation on the other hand. As noted above, Plaintiffs argue that the counter means only counts tone signals that are received during the entry of a predetermined access sequence, rather

15

than any tone received on the line. By arguing such, Plaintiffs ostensibly get around the fact that VTech's machines do not count every digit entered for infringement purposes and avoid a finding of anticipation by requiring counting of every digit once the access sequence is initiated, something that the Monroe 3200R-13 does not do. Defendants thus conclude that, as a matter of law, the counter means is either anticipated or not infringed.

We do not agree, however, that this determination is, as Defendants argue, "a pure matter of law." We have construed the function counter means limitation as "count[ing] the number of tone signals that are entered until the number of signals entered equals the number of digits in the access code. If the correct tone signals were entered, the counter means enables operation of the detecting means." Additionally, we have identified the corresponding structure of the counter means. It is up to the parties to convince the fact-finder that the invention captured in the '900 patent and its corresponding structure either does or does not require counting of every digit and whether that counting occurs only in the context of the access sequence and not before. The parties experts have, of course, offered widely divergent views on these issues. Therefore, we conclude on the record before us that there is a genuine issue of material fact as to whether the '900 patent counter means begins counting every DTMF digit received or only a predetermined number of digits received after the initiation of the access sequence. Defendants' motion for summary judgment on this point is denied.

## 2. The Matthews Patent and The RC-850 Repeater Controller

TDS claims that a 1983 patent issued to Gordon Matthews and the RC-850 repeater controller anticipate Claim 5 of the '900 patent and render it invalid. But TDS simply has not adduced sufficient evidence to merit summary judgment on the issue of anticipation with respect

16

to these two pieces of prior art. Notably missing from its analysis of the RC-850 is a sufficient comparison of the integrated circuit digital logic of the '900 patent and the microprocessor processes and software source code employed in the RC-850, a comparison that we have held is required in the context of infringement. Thus, TDS's motion for summary judgment on anticipation grounds is denied.

### B. Invalidity under 35 U.S.C. § 112 for inoperability, failure to satisfy the written description requirement and indefiniteness.

Defendants next argue that Jackson's patent is invalid for failing to satisfy the requirements of 35 U.S.C. § 112. First, Defendants claim that the '900 patent is inoperable. They next claim that the patent is invalid for failing to satisfy the written description requirement. Finally, Defendants contend that Claim 5 fails for indefiniteness. We reiterate that there is a presumption of validity attached to the '900 patent, 35 U.S.C. § 282, and that Defendants must prove invalidity by clear and convincing evidence.

#### 1. Inoperability

Defendants claim that the circuit disclosed in the '900 patent is inoperable. According to 35 U.S.C. § 112, ¶ 1, "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . . ." To be enabling under § 112, a patent must contain a description that enables one skilled in the art to make and use the claimed invention. *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984). That some experimentation is necessary does not preclude enablement; the amount of

experimentation, however, must not be unduly extensive. *Id.*; *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1557 (Fed. Cir. 1983). Thus, if the inoperability is significant, and effectively forces one of ordinary skill in the art to experiment unduly in order to practice the claimed invention, the claims may be deemed invalid. *Atlas Powder*, 750 F.2d at 1577.

Defendants claim that in order to operate properly, the '900 patent circuit, as demonstrated by the illustrations in the specification, would require several modifications and additions that are not accounted for in the specification. In essence, Defendants argue that it is uncontested that the '900 circuit does not work as illustrated. In response, Plaintiffs offer the testimony of expert Dr. Silva, who opines that, although the '900 circuit does require some tinkering in order to become operable, it does not require undue experimentation by someone of ordinary skill in the art. According to Plaintiffs, although the *illustration* contained in Figure 3 of the specification might need modifications to create a workable device, Defendants do not argue that the *written* description contained in the specification is inadequate or inoperable. Plaintiffs note that drawings are not relevant to the written description requirement under § 112. We agree. The presence of inaccurately drawn figures does not, standing alone, establish inoperativeness or a failure to provide the requisite specifications. *See Afros S.p.A. v. Krauss-Maffei Corp.*, 671 F. Supp. 1402, 1450 (D. Del. 1987). A person of ordinary skill in the art uses the figures as a guide, particularly when they do not exhibit the entire invention claimed in the patent. *Id.* Thus, "figures with inoperative aspects not otherwise described or claimed in the patent do not, on their own, demonstrate inoperativeness or an inadequate specification under § 112, first paragraph." *Id.* We do not believe that Defendants have carried their burden of demonstrating by clear and convincing evidence that the written description of the '900 patent is

18

inoperative. In any event, there are disputed issues of fact as to whether any problems with the '900 circuit may be easily resolved with simple additions and minor experimentation or whether the device must be deemed inoperable. Thus, we will not hold as a matter of law that the '900 patent is inoperable.

### 2. The Written Description Requirement

For the same reasons, Defendants' argument that the '900 patent is invalid for failing to satisfy the written description requirement of § 112 likewise fails. Defendants fail to challenge any portion of the actual text of the '900 patent, and instead focus exclusively on defects within the illustrations. And, again, there is some dispute as to whether someone skilled in the art would be able to overcome any shortcomings in the drawings when trying to implement the invention. We cannot say that Defendants have satisfied their heightened burden of proof on this issue.

### 3. Indefiniteness

Finally, Defendants argue that the '900 patent fails for indefiniteness because of errors and omissions in the access limiting circuit means of Claim 5. Specifically, Defendants assert that Jackson's means-plus-function claims necessarily incorporate limitations of the disclosed embodiments because such claims are construed to cover the corresponding structures described in the specification. Thus, according to Defendants, "[o]ne consequence of incorporating the structures from the specification into the claim is that the structures must, in fact, be sufficiently described to be capable of performing the asserted function." (R. 141, VTech's Mem. at 20.) Therefore, uncontested flaws in the disclosed circuit means that there is no defined structure with

19

which an accused infringer can compare its accused device. We disagree. As the Federal Circuit recently noted:

> The written description does not have to explicitly describe the structure (or material or acts) corresponding to a means (or step-) plus- function limitation to particularly point out and distinctly claim the invention as required by 35 U.S.C. 112 ¶ 2. Rather, disclosure of structure corresponding to a means-plus-function limitation may be implicit in the written description if it would have been clear to those skilled in the art what structure must perform the function recited in the means-plus-function limitation.

*Amtel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1380 (Fed. Cir. 1999) (citing with approval PTO guidelines addressing whether adequate structure has been disclosed to support a means-plus-function limitation). Sufficient structure was disclosed in the specification of the '900 patent to support the access limiting circuit means based on the understanding of one skilled in the art. Indeed, we identified the corresponding structure in our construction of Claim 5, as have the three other courts that have addressed the issue. Therefore, Defendants' indefiniteness argument fails.

### III. Patent Unenforceability

Finally, Defendants claim that the '900 patent is unenforceable due to misrepresentations made by Jackson and his patent attorneys during the reexamination of the '900 patent and because they otherwise failed to satisfy the duty of candor and good faith in those proceedings. Patent applicants (and their representatives) are required to prosecute patent applications in the PTO with candor, good faith and honesty. *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1233 (Fed. Cir. 2003). Breaching this duty constitutes inequitable conduct. *Id.* Inequitable conduct includes affirmative misrepresentations of material facts, failure to disclose material information or submission of false material information. *Id.*; *PerSeptive*

*Biosys., Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318 (Fed. Cir. 2000). Additionally,

each of these acts must be accompanied by an intent to deceive the PTO. *PerSeptive*, 225 F.3d at

1318. Defendants must prove inequitable conduct by clear and convincing evidence of: (1) the

materiality of the prior art; (2) knowledge chargeable to the applicant of that prior art and its

materiality; (3) the applicant's failure to disclose the prior art; and (4) intent to mislead the PTO.

*Bristol-Myers*, 326 F.3d at 1233. Thus, proof of materiality and intent are both threshold

requirements to a finding of unenforceability due to inequitable conduct. *Id.* Once these

threshold findings are met, we must then weigh the materiality and intent to determine whether a

determination of inequitable conduct is warranted. *Am. Hoist & Derrick Co. v. Sowa & Sons,*

*Inc.*, 725 F.2d 1350, 1364 (Fed. Cir. 1984) (noting that "fraud may be determined only by a

careful balancing of intent in light of materiality.") If so, the patent may be deemed

unenforceable. This determination is within our discretion, but we note that "a summary

judgment of fraud or inequitable conduct, reached while denying to the person accused of the

fraud or inequitable conduct the opportunity to be heard on the issue, is a draconian result."

*KangaROOS U.S.A., Inc. v. Caldor, Inc,* 778 F.2d 1571, 1573-74 (Fed. Cir. 1985). Intent to

mislead or deceive is a factual issue that, if contested, is not readily determined within the

confines of a summary judgment motion. *Id.* at 1576. That being said, however, bare

declarations of lack of intent to mislead amount to little more than a conclusory denial, which is

insufficient to defeat a motion for summary judgment. *Paragon Podiatry Lab., Inc. v. KLM*

*Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993).

     Defendants raise four examples of alleged inequitable conduct by Plaintiffs: (1)

misrepresentations to the PTO regarding prior art in a *QST* article; (2) failure to disclose material

information relating to the RC-850 device in connection with Jackson's litigation against Matsushita; (3) misrepresentation of the Bolgiano patent; and (4) failure to disclose the Matthews patent.

## A. QST Article

Defendants first claim that Jackson and his counsel made numerous false statements in an Information Disclosure Statement ("IDS") to the PTO in November 1996 regarding the prior art status of a *QST* article. According to Defendants, Jackson became aware of the *QST* article in connection with his litigation against Matsushita, wherein Matsushita disclosed the *QST* article as prior art. Later, in the IDS submitted to the PTO in November 1996, Jackson represented that none of the 260 references cited in the IDS disclose any structure corresponding to the '900 patent, and if they do, the references were less relevant than the materials already presented to the PTO. Defendants assert, however, that the *QST* article teaches every element of Claims 1 and 5 of the '900 patent. Defendants also note that the patent examiner granted the reexamination certificate only a few days after Jackson's submission of the IDS, thus implying that the examiner did not have time to substantively review each piece of prior art, and instead relied on Jackson's alleged misrepresentations about the irrelevance of the *QST* article. Finally, Defendants suggest that we may infer a finding of intent from the fact that Jackson's counsel spent many hours reviewing the prior art references, discovered that the *QST* article disclosed a gating means and then reported to the patent examiner that the prior art was irrelevant. But we find Defendants' proof of intent on this point circumstantial at best and insufficient to support summary judgment.

## B. The RC-850 and Failure to Disclose Material Information from Litigation

Next, Defendants claim that Jackson misleadingly downplayed the significance of another piece of prior art that was brought to his attention during the Matsushita litigation. According to Defendants, a series of 1980 articles that appeared in *73 Magazine* regarding the RC-850 DTMF controller constitutes prior art. And, Defendants claim, the RC-850 discloses and embodies each element of Claims 1 and 5; therefore, the mere fact that Matsushita contended that RC-850 was invalidating prior art imposed a duty on Jackson and his counsel to disclose the nature and substance of those allegations to the PTO during concurrent reexamination. Furthermore, Jackson failed to submit to the PTO the deposition testimony and exhibits of the RC-850's creator, even though Jackson's counsel attended the deposition during the pendency of the '900 patent's third reexamination proceeding. The deposition testimony was important because it clarified that certain limitations of the '900 patent were indeed contained within the RC-850, questions that remained open after the *73 Magazine* articles. Defendants contend that all of these factors, taken together, are clear evidence of inequitable conduct.

Plaintiffs respond by citing various regulations and the Manual of Patent Examination Procedure ("MPEP") for the proposition that Jackson had no duty to submit the deposition transcript or exhibits because it was a reexamination proceeding, which is governed by different rules than an original prosecution. Citing 35 U.S.C. § 301 *et seq.*, Jackson first claims that the only prior art an examiner may consider during a reexamination is "patents or printed publications" and that depositions and other litigation materials fall outside the ambit of permissible documentation. Then, relying on 37 C.F.R. § 1.555, which governs the duty of

disclosures during reexamination, and the MPEP, Jackson argues that the Patent Office would have rejected as improper any attempt to submit such information.

Whether inequitable conduct occurred with respect to the RC-850 materials is a closer question. As an initial matter, we believe that Jackson has misrepresented the requirements of the above-cited sections and our reading of those rules leads us to a different conclusion. The regulation relating to information to be submitted in connection with an reexamination proceeding defines as material "noncumulative information" contained in either "a patent or printed publication that establishes . . . a prima facie case of unpatentability of a claim" **or** information that "refutes, or is inconsistent with, a position the patent owner takes in . . . [a]sserting an argument of patentability." 37 C.F.R. § 1.555 (emphasis supplied). Thus, material information is not limited to "patents and printed publications" as Jackson suggests. And the MPEP makes clear that the patentee is obligated to bring to the examiner's attention any material information arising from related litigation, including "pleadings, admissions, discovery including interrogatories, depositions, and other documents, and testimony." (R. 156, Pls.' Inequitable Conduct Resp., Ex. F, MPEP § 2001.06(c).) Thus, we reject Jackson's argument that he was not required to flag, or even prohibited from submitting, the Martin deposition and exhibits. Additionally, we find that the information contained in the deposition and its exhibits was "material" as that term is defined in the applicable regulations. Clearly Jackson was aware of this material information since his counsel attended the deposition and he failed to disclose the information to the examiner during his concurrent reexamination. Thus, we are left with the question of Jackson's intent to deceive.

24

Defendants correctly point out that "direct evidence of intent or proof of deliberate scheming is rarely available in instances of inequitable conduct, but intent may be inferred from the surrounding circumstances." *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997). Furthermore, intent may be inferred where a patent applicant knew, or should have known, that the withheld information would be material to the PTO's consideration of the patent application. *Id.* "The fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent." *Lipman v. Dickinson*, 174 F.3d 1363, 1370 (Fed. Cir. 1999). In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995).

Applying these principles to the facts of this case leads us to conclude that there is clear and convincing evidence that Jackson intended to deceive the PTO when he failed to disclose the Martin deposition. His counsel attended the deposition and was well aware that Martin testified regarding the operation of the RC-850, its status as prior art and that Martin gave a live demonstration of the RC-850 in operation. This is particularly material in light of Jackson's representation that the *73 Magazine* articles disclosing the RC-850 were less relevant to the reexamination proceeding than the references currently pending before the PTO or otherwise failed to impact the patent's validity. (R. 139, Defs.' Exs., Tab 40, Supplemental IDS.) Having established that the threshold inquiries of materiality and intent have been satisfied, the Court has decided that this issue is too factual to be decided on summary judgment and therefore summary judgment is denied without prejudice on this issue. The Court has decided to reserve its final

ruling on inequitable conduct with respect to the RC-850 materials until the conclusion of a

bench trial, which the Court will hold on December 15, 2003.

### C. Misrepresentations Surrounding the Bolgiano Patent and Failure to Disclose the Matthews Patent

Defendants next contend that Jackson made misrepresentations about another piece of

prior art that was before the PTO in the reexamination proceedings. Specifically, Defendants

claim that Jackson falsely represented that none of the references cited in an April 1996 IDS

contained a gating means, when the Bolgiano patent clearly does. In addition, Jackson falsely

stated that the Bolgiano patent differed from his own because it was intended only to turn devices

on remotely and not to turn them off. According to Defendants, the Bolgiano patent's abstract

clearly indicates that the claimed invention is not restricted to turning devices on, but rather is

directed to "the activation or deactivation of electrically controlled devices." (R. 141, Defs.'

Mem. at 30.) But Plaintiffs point out that Blackstone never told the PTO that a gating means

was absent from each listed piece of prior art, but rather that this prior art lacked the same

combination of elements claimed in the '900 patent. (R. 139, Defs.' Exs., Tab 40, Supplemental

IDS at 9.) We do not believe that these alleged misrepresentations rise to the level of inequitable

conduct.

Finally, Defendants argue that Jackson engaged in inequitable conduct when he failed to

disclose the Matthews patent in the third reexamination proceeding. But Blackstone avers that

he was not even aware of the existence of the patent during that time period, even though

someone in his office had requested or received a copy of it. (R. 156, Pls.' Inequitable Conduct

Resp., Ex. D, Blackstone Decl. at ¶¶ 24-26.) This statement differs somewhat from the blanket

denials that we have held insufficient to refute a finding of intent, and therefore we do not believe that Defendants have demonstrated by clear and convincing evidence that inequitable conduct occurred in this instance.

## CONCLUSION

We believe that Defendants have raised some persuasive arguments as to the issues of non-infringement and invalidity that perhaps might persuade a jury to rule in their favor. But we cannot say the record before us is devoid of genuine issues of material fact presently entitling Defendants to summary judgment. Thus, for the foregoing reasons, Defendants' motions for summary judgment are denied. (R. 126-1, 137-1.)

Defendants, however, have raised a serious and close question regarding alleged inequitable conduct by Jackson in failing to disclose litigation materials related to the RC-850 repeater controller, which this Court has decided to address in a bench trial prior to any jury proceeding in this matter.

A status hearing will be held on November 12, 2003, at 10:00 a.m. to address the structure and length of the December 15, 2003 bench trial.

ENTERED: _____
Judge Ruben Castillo
United States District Court

Dated: October 23, 2003

27